[Docket No. 22]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| TIMOTHY L. JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>TRUIST BANK NA,<br><br>Defendant. | Civil No. 25-6998-RMB-EAH<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**:

It is not unusual for a court to read between the lines; it is intrinsic to judicial adjudication. What Plaintiff Timothy L. Jackson ("Plaintiff") asks this Court to do here is beyond that. Calling for the Court to act beyond its role, Plaintiff contends that "invisible" transmission codes sent by Defendant Truist Bank NA ("Defendant") imperceptibly rendered his facially accurate consumer credit report (a point not challenged by Plaintiff) derogatory; and that this Court should intervene. [Docket No. 25, at 3 ("Pl. Br.").] For the reasons that follow, the Court declines Plaintiff's invitation at this time.

The Court will therefore **GRANT** Defendant's Motion to Dismiss (the "Motion") [Docket No. 22] and **DISMISS WITHOUT PREJUDICE** the Second Amended Complaint (the "SAC") [Docket No. 18]. The Court will, however, **DENY WITHOUT PREJUDICE** Defendant's request for attorney's fees, but will **WARN**

Plaintiff that he will likely have to pay attorney's fees if this District has to dismiss a subsequent matter filed by him that alleges a violation of the Fair Credit Reporting Act (the "FCRA") premised on an alleged inaccuracy about his bankruptcy. Lastly, and with this warning in mind, the Court will **GRANT** Plaintiff leave to file a good-faith third amended complaint.

## I. FACTS AND PROCEDURAL HISTORY

According to Plaintiff, he had a "Truist account ending in 4782 (the 'Account')." [SAC ¶ 8.] In November 2023, Plaintiff filed a voluntary Chapter 7 bankruptcy petition in this District's Bankruptcy Court. [*Id.* ¶ 6.] The Bankruptcy Court ultimately entered an Order of Discharge in March 2024, which allegedly "eliminat[ed] Plaintiff['s] personal liability on all discharged debts," including the Account. [*Id.* ¶¶ 7–8.] "Upon discharge," Plaintiff alleges that he "had no ongoing payment obligation on the Account. The balance became $0, and the debt became legally noncollectible." [*Id.* ¶ 9.]

Plaintiff alleges that furnishers, like Defendant, "transmit consumer credit data to [Consumer Reporting Agencies ('CRAs')] using the standardized Metro 2 Format maintained by the Consumer Data Industry Association ('CDIA')."[1] [*Id.* ¶ 10.] Metro 2 includes numerous standardized fields populated by furnishers, including, as relevant here, Account Status and Payment Rating. [*Id.* ¶ 11.] CRAs purportedly

[1] Throughout the SAC, Plaintiff includes a "®" trademark symbol after Metro 2. *See, e.g.*, [SAC ¶¶ 5, 10–11.] The Court sees no reason to include that, and for uniformity, will omit the symbol when quoting from the SAC.

"rely on these fields to classify accounts, calculate credit scores, and populate" consumer credit reports. [*Id.* ¶ 12.] Plaintiff alleges that under Metro 2, "an account discharged in bankruptcy should be reported with status and payment codes that accurately reflect its discharged, non-collectible status, not as a currently derogatory account." [*Id.* ¶ 13.]

In April 2025, Plaintiff obtained his Experian consumer credit report reflecting the following information about the Account: "Status: Discharged through Bankruptcy Chapter 7;" "Payment Status: Never Late;" "Balance: $0;" and "Status Updated: November 2023." [*Id.* ¶ 14.] Plaintiff, however, does not object to how the report "visually format[ted] or display[ed] credit information." [*Id.* ¶ 19.] Rather, Plaintiff "challenges what [Defendant] transmitted … in standardized Metro 2 fields." [*Id.*] Plaintiff alleges that Defendant furnished Metro 2 Account Status and Payment Rating codes "that caused the Account to be treated as having a current negative status despite the bankruptcy discharge." [*Id.* ¶ 16]; *see* [*id.* ¶ 18(a) ("The Account Status and Payment Rating furnished by [Defendant] did not accurately reflect that the Account was discharged, non-collectible, and not currently delinquent.").]

Upon receiving the report, Plaintiff "sent a detailed written dispute to Experian" and TransUnion—two CRAs—contesting "accuracy of the Account's post-discharge status and date information."[2] [*Id.* ¶¶ 23–24.] The CRAs then "transmitted … notices

[2] There is perhaps a fundamental flaw in the SAC overlooked by Defendant (and apparently Plaintiff). Plaintiff alleges that he sent disputes to the CRAs in February 2025, yet he did not obtain the disputed credit report until April 2025. [SAC ¶¶ 14, 23–24.] This naturally begs the question of how Plaintiff could have plausibly disputed

to" Defendant "identifying that Plaintiff disputed th[ese] accurac[ies]." [*Id.* ¶ 25.] In April 2025, Defendant conducted an investigation and "verified the Account as accurate." [*Id.* ¶ 26.] Plaintiff alleges that Defendant's "investigation was unreasonable because it failed to examine the substance of the dispute—namely, the Account Status and Payment Rating fields" transmitted to the CRAs. [*Id.* ¶ 27.] Specifically, Defendant purportedly failed to "[r]eview its Metro 2 Account Status and Payment Rating Codes;" "[d]etermine whether those codes accurately reflected discharged, non-collectible status;" "[a]ssess why the Account continued to be classified as currently negative;" and "[c]ompare its internal records to the date it actually transmitted." [*Id.* ¶ 28.] Plaintiff alleges that Defendant "merely confirmed that a bankruptcy occurred, which does not address the accuracy of the transmitted status codes," and "continued furnishing the same inaccurate status." [*Id.* ¶¶ 29–30.]

Defendant's conduct allegedly caused Plaintiff's applications for a personal loan and credit card to be denied. [*Id.* ¶¶ 31–35.] So Plaintiff brought suit in New Jersey state court in May 2025, alleging violations of the FCRA. [Docket No. 1, Ex. A.] Defendant then timely removed the action to this Court based on federal-question jurisdiction. [*Id.* ¶ 9]; *see* 28 U.S.C. § 1446. On January 13, 2026, the Court granted Plaintiff leave to file the SAC pursuant to Federal Rule of Civil Procedure 15(a)(2),

---

a credit report that he had not received by that time. In any event, the Court will liberally assume a proper chronology, all the more so because dismissal is otherwise warranted.

which he did soon thereafter.[3] [Docket No. 16.] The SAC sets forth violations of §§ 1681s-2(b), 1681n, and 1681(o) of the FCRA, against which Defendant has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket No. 22.] Defendant's Motion is fully briefed and ready for review. [Docket Nos. 22-1 ("Def. Br."); Pl. Br.; 26 ("Def. Reply Br.").]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A party may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure

[3] Defendant argues first that the SAC should be dismissed because it differs from that proposed in Plaintiff's application for leave. [Def. Br. 13–14.] Indeed, it is the case that the SAC is materially different from its proposed predecessor, a point not contested by Plaintiff. *Compare* [Docket No. 12-2], *with* [SAC]; [Pl. Br. 16–18.] That said, Defendant has had an opportunity to respond to the SAC and the Court is going "to secure the just, speedy, and inexpensive determination of" this action on the merits by dismissing the SAC for failure to state a claim. FED. R. CIV. P. 1. The SAC shall therefore remain the operative pleading. The Court will still take a moment to address Plaintiff's rebuttal on this issue.

It is Plaintiff's position that the Court's Order granting him leave to file the SAC "did not limit [him] to the exact proposed version." [Pl. Br. 17.] That is so because the Order did not have to. This District's Local Civil Rule 15.1(a)(1) is clear; any application for leave must be accompanied by "a copy of the proposed amended pleading." In granting his application, Plaintiff should not mistake this Court's largesse for indulgence. As a *pro se* litigant, especially one as experienced as Plaintiff, he is not exempt from complying with the Rules of this Court. *See Thakar v. Tan,* 372 F. App'x 325, 328 (3d Cir. 2010). Plaintiff is accordingly **WARNED** that any future failure to obey Local Civil Rule 15.1(a)(1) will result in the Court striking the amended pleading from the record, and possibly additional sanctions. *See, e.g.*, *Abrams v. eResearch Tech., Inc.*, 703 F. Supp. 3d 593, 600 (E.D. Pa. 2023) ("[D]istrict courts within the Third Circuit use Rule 12(f) to strike unauthorized amendments to pleadings.") (collecting cases).

12(b)(6) for "failure to state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *id.* at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

When considering a 12(b)(6) motion to dismiss, a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d Cir. 2005) (citations omitted). "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)). The proper role of the district court in reviewing the sufficiency of a complaint is thus limited: the issue is not "whether the plaintiffs will ultimately prevail" but "whether they are entitled to offer evidence to support their claims." *Langford v. City of Atl. City*, 235 F.3d 845, 847 (3d Cir. 2000). "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09 (3d Cir. 1991)). In evaluating the Motion, the Court is mindful of its obligation to review Plaintiff's *pro se*

filings liberally. *See Beasley v. Howard*, 623 F. Supp. 3d 434, 439 (D.N.J. 2022) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## III. DISCUSSION

The SAC alleges that Defendant violated §§ 1681s-2(b), 1681n, and 1681(o) of the FCRA. [SAC ¶¶ 36–38.] Defendant argues that Plaintiff fails to state a claim because he does not allege an inaccuracy about the Account. *See* [Def. Br. § I.] If dismissed, Defendant then asks this Court for an award of attorney's fees under § 1681o(b) of the FCRA. [*Id.* § II.] Plaintiff objects to both these arguments, and alternatively requests leave to file a third amended complaint if the SAC is dismissed. *See* [Pl. Br.] The Court begins with whether Plaintiff has stated plausible claims to relief under the FCRA.

### A. Plaintiff Has Not Stated a Plausible Claim to Relief under §§ 1681s-2(b), 1681n, or 1681(o) of the FCRA

The FCRA seeks "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). Under the FCRA's statutory scheme, "[t]he FCRA places certain duties on those who furnish information to [CRAs]." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011). Upon receiving notice of a consumer's dispute with a CRA under § 1681i(a)(2), the furnisher shall "conduct an investigation with respect to the disputed information" and

"report the results of the investigation to the consumer reporting agency." 15 U.S.C. §§ 1681s-2(b)(1)(A), (C). If the investigation determines the disputed information is "inaccurate or incomplete or cannot be verified," the furnisher shall, as appropriate, "modify," "delete," or "permanently block the reporting of that item of information." *Id.* § 1681s-2(b)(1)(E). Section 1681s-2(b) of the FCRA is "the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information."[4] *SimmsParris*, 652 F.3d at 358 (collecting circuit cases).

To state a claim under § 1681s-2(b), Plaintiff must sufficiently allege that he: "(1) … sent notice of disputed information to a CRA under § 1681i, (2) the CRA subsequently notified the defendant furnisher of the dispute under § 1681i(a)(2), and (3) the furnisher failed to investigate and modify the inaccurate information." *Floyd v. Upgrade, Inc.*, No. 25-12151, 2026 WL 1803512, at *5 (D.N.J. June 23, 2026) (citing *Cabrera v. Nazor*, No. 23-2745, 2024 WL 310523, at *5 (D.N.J. Jan. 25, 2024)). But, essentially, the FCRA only holds furnishers liable for the transmission of inaccurate information. Thus, "[a] plaintiff must show inaccuracy to state a claim under § 1681s-2(b)." *Farrington v. Freedom Mortg. Corp.*, No. 20-4432, 2022 WL 16552779, at *10 (D.N.J. Oct. 31, 2022) (citing *Esperance v. Diamond Resorts*, No. 18-10237, 2022 WL 1718039, at *5 (D.N.J. May 27, 2022)); *see also Ritz v. Equifax Info. Servs., LLC*, No. 23-

---

[4] Although not raised by Defendant, §§ 1681n and 1681o of the FCRA "cannot be used by a private individual to assert a claim for a violation of § 1681s–2(a), as such claims are available only to the Government." *SimmsParris*, 652 F.3d at 358 (citing 15 U.S.C. §§ 1681s-2(c), (d)). The want of a private cause of action is an additional reason to dismiss Plaintiff's claims brought under these two provisions, and the Court's true inquiry is whether Plaintiff has stated a claim under § 1681s-2(b).

2181, 2025 WL 1303945, at *3 (3d Cir. May 6, 2025) (quoting *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775 (7th Cir. 2023)) ("[F]ederal circuit courts that have interpreted § 1681s[-]2(b) agree on two threshold requirements for a claim under the statute:" (1) "[t]he plaintiff must make a prima facie showing that the ... furnisher provided incomplete or inaccurate information," and (2) "[t]he plaintiff must ... show that the incompleteness or inaccuracy was the product of an unreasonable investigation."). Whether Plaintiff sufficiently alleged an inaccuracy is at issue in this case. *See* [Def. Br. § I.]

It is well established "that factually incorrect information is 'inaccurate' for purposes of FCRA." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (citing *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616–17 (6th Cir. 2012)). "And even 'technically correct' information is inaccurate if 'it create[s] a materially misleading impression' such 'that [it] can be expected to have an adverse effect.'" *Ritz*, 2025 WL 1303945, at *4 (quoting *id.*). To determine this, the Court asks whether "a reasonable reader would understand it to convey information that is materially false or misleading." *Bandes v. TransUnion LLC*, No. 25-3184, 2026 WL 1266110, at *1 (3d Cir. May 8, 2026) (first citing *Bibbs v. Trans Union LLC*, 43 F.4th 331, 342–43 (3d Cir. 2022); and then citing *Seamans*, 744 F.3d at 865). "[I]f there is no threshold showing of inaccuracy, then the inquiry stops there and 'the reasonableness of the investigation is not in play.'" *Ritz*, 2025 WL 1303945, at *3 (quoting *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022)).

The parties do not dispute that Defendant's furnished information is facially accurate. Defendant allegedly communicated to the CRAs that the Account was discharged through Plaintiff's Chapter 7 Bankruptcy initiated in November 2023, thus reflecting a "Never Late" payment status and a zero dollar balance. [SAC ¶ 14.] Plaintiff does not challenge how his credit report "visually format[ted] or display[ed] [this] credit information."[5] [*Id.* ¶ 19]; *see also* [Pl. Br. 3, 14 (Plaintiff "does not dispute that text" or that his "bankruptcy is negative.").] Rather, Plaintiff believes that Defendant transmitted "invisible" Metro 2 Account Status and Payment Rating fields

---

[5] For this reason, the Court fails to see the import of Plaintiff's allegation that the "Status Updated: November 2023" entry on his credit report does not "accurately convey[] the legally operative discharge date of March 15, 2024, creating a misleading representation of recency." [SAC ¶ 18(b).] The SAC is clear: Plaintiff does not challenge how his credit report was "visually format[ted] or display[ed] credit information." [*Id.* ¶ 19]. Plaintiff reiterated this unequivocal position in his papers: He "does not dispute that text." [Pl. Br. 3.] Thus, Plaintiff's contention that Defendant failed to address this issue in its brief is specious, and once Plaintiff (arguably impermissibly) clarified that this was a standalone claim, [*id.* at 8–9], Defendant did reply to it, [Def. Reply Br. 6–9].

Regardless, no "reasonable reader would understand [this entry] to convey information that is materially false or misleading." *Bandes*, 2026 WL 1266110, at *1. To start, the "Status Updated" field does not purport to reflect the discharge date of the bankruptcy. Were it to do so, Plaintiff may have been in a stronger position. The tradeline simply reflects the undisputed allegation that Plaintiff initiated the bankruptcy proceeding on November 14, 2023. [SAC ¶ 6, 11.] Moreover, even if it were materially misleading, it cannot reasonably "be expected to have an *adverse* effect." *Ritz*, 2025 WL 1303945, at *4 (emphasis added). The bottom line is this: A reasonable interpretation of Plaintiff's report "in [its] entirety would show that [the bankruptcy entry] is historical information, and that Plaintiff was not in active bankruptcy." *White v. Flagstar Bank, F.S.B.*, No. 24-0177, 2024 WL 5360095, at *5 (D.N.J. Nov. 7, 2024). Therefore, Defendant's provision of information "was not potentially misleading as a matter of law," and Plaintiff's claim, insofar as it is properly asserted, must fail. *Id.*

that resulted in a derogatory classification of the Account. [Pl. Br. 3.] Plaintiff's theory and allegations do not withstand 12(b)(6) scrutiny.

First, the Court does not find Plaintiff's Metro 2 theory plausible. Tellingly, Plaintiff does not provide a single case supporting it. *See* [*id.* at 3–11.] This is unsurprising, given that courts across the country have generally held that "[t]he 'FCRA does not mandate compliance with Metro 2 or any other particular set of industry standards.'" *Davenport v. Capio Partners LLC*, No. 20-01700, 2021 WL 1666977, at *9 (M.D. Pa. Apr. 28, 2021) (quoting *Smith v. Nissan Motor Acceptance Corp.*, No. 18-5473, 2020 WL 6293456, at *6 (N.D. Ga. Jan. 3, 2020)); *see, e.g.*, *Thomas v. TransUnion*, No. 24-00402, 2025 WL 417842, at *2 (D. Conn. Feb. 6, 2025) ("Moreover, even if some factual narrative might be discernable, it is axiomatic that Plaintiff may not seek relief pursuant to the CDIA and/or METRO 2 guidelines."); *Erenthal v. Experian Info. Sols., Inc.*, No. 20-2785, 2021 WL 941404, at *4 (C.D. Cal. Feb. 26, 2021) ("First, industry standards such as the Metro 2 guidelines are not binding, and violating them does not amount to a *per se* FCRA violation."); *Uehara v. TD Bank, Nat'l Ass'n*, No. 17-0019, 2018 WL 1472712, at *5 (D. Nev. Mar. 26, 2018) (citation and quotation marks omitted) ("[T]he Court previously stated that the industry guidelines—such as Metro 2—do not establish the standards for accuracy under the FCRA. Therefore, Plaintiff cannot claim a violation of the FCRA premised upon a deviation of the Metro 2 guidelines."); *Anderson v. Experian Info. Sols., Inc.*, No. 16-03328, 2017 WL 914394, at *6 (N.D. Cal. Mar. 8, 2017) ("[D]istrict courts within the Ninth Circuit overwhelmingly have held that a violation of industry standards[,

such as the Metro 2 guidelines], is insufficient, without more, to state a claim for violation of the FCRA.") (collecting cases); *cf. Florence v. Cenlar Fed. Sav. & Loan*, No. 16-0587, 2018 WL 1145804, at *7 (D. Nev. Mar. 1, 2018) (dismissing plaintiff's FCRA claim on summary judgment "as a matter of law" because "accurately reporting a delinquent debt during the pendency of a bankruptcy is not rendered unlawful simply because a plaintiff alleges that the reporting, though accurate, was inconsistent with industry standards."), a*ff'd sub nom. Florence v. Experian Info. Sols., Inc.*, 775 F. App'x 308, 309 (9th Cir. 2019) (memo.).

"As such, when assessing the sufficiency of FCRA claims based on allegations of a furnisher's noncompliance with Metro 2, courts have been reluctant to recognize a cause of action."[6] *Davenport*, 2021 WL 1666977, at *9 (collecting cases). For good reason, for how would a "reasonable reader," *Bandes*, 2026 WL 1266110, at *1, even

[6] At first glance, *Nissou-Rabban v. Cap. One Bank (USA), N.A.*, No. 15-1675, 2016 WL 4508241 (S.D. Cal. June 6, 2016), supports the notion that merely alleging Metro 2 noncompliance sufficiently states a claim under the FCRA. But that case "held only that if a furnisher reports a debt that is the subject of a pending bankruptcy, it could be misleading for the furnisher to describe that debt as 'charged off'—that is, seriously delinquent and likely uncollectable—without mentioning that the debt is the subject of a pending bankruptcy." *Doster v. Experian Info. Sols., Inc.*, No. 16-04629, 2017 WL 264401, at *5 (N.D. Cal. Jan. 20, 2017) (quoting *id.* at *4). "[A]t most," then, *Nissou-Rabban* "stands for the proposition that a furnisher that reports delinquent debts during the pendency of a bankruptcy should also report the fact that a bankruptcy is pending so that creditors know that those delinquent debts may be discharged in the future." *Id.* That is not what is alleged here. *See* [SAC ¶¶ 1–35.] Furthermore, any theory premised on Metro 2 noncompliance plus "more"—*i.e.*, an alleged inaccuracy on the face of a credit report—finds no traction here either, based on the SAC. *See Anderson*, 2017 WL 914394, at *6 (emphasis added) ("[D]istrict courts within the Ninth Circuit overwhelmingly have held that a violation of industry standards[, such as the Metro 2 guidelines], is insufficient, *without more*, to state a claim for violation of the FCRA."); *supra* n.5.

be able to detect "invisible," [Pl. Br. 3], Metro 2 codes underlying a facially accurate credit report? They would not be, as evidenced by the fact that Plaintiff himself does not allege what the codes specifically transmitted. *See* [SAC ¶¶ 1–35; Pl. Br. 3–14.]

Second, even applying his theory for the sake of argument, Plaintiff does not sufficiently allege an inaccuracy because he "does not dispute that his bankruptcy is negative" nor "challenge … the existence or negativity of the bankruptcy public record."[7] [Pl. Br. 14.] The only reasonable inference to draw is that Defendant's transmitted coding accurately reflected the undisputed fact that Plaintiff has a discharged bankruptcy on his credit file. But Plaintiff digs deeper, "narrow[l]y" arguing that "credit scoring models count the *number* of accounts with current derogatory status as a discrete metric—separate from the public records section of a credit file." [*Id.* (emphasis in original).] In Plaintiff's telling, "[t]he bankruptcy public record registers as one item. When [Defendant's] transmitted Metro 2 codes caused the Account to be classified as a currently active derogatory tradeline, it registered as a second derogatory item—a separate count above and beyond what the bankruptcy public record alone generates." [*Id.*]

The logical fallacy here is immediately apparent. If furnishers of credit information, such as Defendant, are required to transmit accurate coding that complies with Metro 2 guidelines—Plaintiff's theory of the matter—then how would there not be two so-called "accounts"? Defendant either transmits these codes or it does not.

[7] Understood in this way, Plaintiff does not even allege a deviation from the Metro 2 guidelines, to the extent such a theory is even cognizable.

And Plaintiff does not allege that Defendant did not transmit them, or that its transmission of such codes should not result in a separate account, whether accurate or not. *See* [SAC ¶¶ 1–35.] For these reasons, Plaintiff has not alleged a "threshold showing of inaccuracy." *Ritz*, 2025 WL 1303945, at *3. The Court's "inquiry stops there and the reasonableness of the investigation is not in play." *Id.* The Court will therefore grant the Motion and dismiss the SAC.

**B. The Court Will Deny Without Prejudice Defendant's Request to Submit an Application for Fees**

With its dismissal granted, Defendant moves for attorney's fees pursuant to § 1681o(b) of the FCRA. [Def. Br. § II.] Defendant believes the SAC was filed in bad faith, citing to other cases wherein Plaintiff "is trying to assert an FCRA claim involving the Account …, with his theory and claims constantly shifting in vague and contradictory ways." [*Id.* at 13.] Defendant also brings up Plaintiff filing a materially-different SAC than that proposed in his application for leave. [*Id.* at 13–14.] Plaintiff, for his part, does not really engage with any of these arguments. *See* [Pl. Br. 15–16.]

Section 1681o(b) provides for reasonable attorney's fees "[o]n a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment." "To prove 'bad faith' under … [§] 1681o(b) a party must 'show either that the party subjectively acted in bad faith – knowing that he had no viable claim – or that he filed an action or paper that was frivolous, unreasonable, or without foundation." *Stephenson v. Experian Info. Sols., Inc.*, No. 25-12411, 2026 WL 2224840, at *9 (N.D. Ill.

Aug. 3, 2026) (quoting *Pappas v. Experian Info. Sols.*, No. 15-8115, 2017 WL 3052978, at *1 (N.D. Ill. 2017)). "In considering whether a filing is made in bad faith, the court will focus on the party's mental state at the time of the filing, regardless of whether the filing turned out to be baseless." *Betch v. Nationstar Mortg., LLC*, No. 25-27, 2026 WL 513482, at *8 (D. Md. Feb. 24, 2026) (quoting *Alston v. Branch Banking & Tr. Co.*, No. 15-3100, 2018 WL 4538538, at *3 (D. Md. Sept. 20, 2018)). Defendant "has the burden to demonstrate that [fees] are warranted." *Huertas v. Citigroup, Inc.*, No. 13-2050, 2015 WL 2226012, at *6 (D.N.J. May 11, 2015) (citation omitted).

This Court is familiar with Plaintiff's failed attempts to recover under the FCRA despite acknowledging the existence of his bankruptcy. *See, e.g.*, *Jackson v. LexisNexis Risk Data Mgmt. Inc.* ("*LexisNexis*"), No. 25-13905, 2026 WL 836921 (D.N.J. Mar. 26, 2026). In that matter, Plaintiff sued LexisNexis under the FCRA for providing the allegedly "unverifiable" bankruptcy to a CRA, despite conceding in his brief the bankruptcy's existence. [*Id.* at *5.] In fact, the Court even warned Plaintiff, then proceeding *in forma pauperis* ("IFP"), that he skirted with frivolity and an IFP-disabling first strike if he elected to file an amended pleading (after the Court granted him leave to do so) that renewed an FCRA claim alleging inaccuracies or the unverifiability of his bankruptcy. *Id.* Plaintiff ultimately did not file an amended complaint and the case was dismissed for failure to state a claim. Nonetheless, the Court finds that Defendant has not met its burden.

First, as noted, the SAC is going to remain the operative pleading in this matter. *See supra* n.3. Defendant has had an opportunity to respond to the SAC and the Court

is going to grant Defendant's request to dismiss it. *Id.* Second, Plaintiff filed the instant lawsuit before he initiated the one against LexisNexis. [Docket No. 1, Ex. A (filed May 1, 2025)]; *LexisNexis*, 2026 WL 836921, at *1 (filed June 18, 2025). Thus, the Court issued its admonition in *LexisNexis* after Plaintiff filed the former against Defendant, and even after Plaintiff filed the SAC. *LexisNexis*, 2026 WL 836921 (warning Plaintiff on Mar. 26, 2026); [SAC (filed on Jan. 23, 2026).]

Defendant does refer the Court to three other cases filed by Plaintiff in this District: *Jackson v. Sunrise Credit Servs., Inc.* ("*Sunrise*"), No. 22-04745; *Jackson v. Equifax Info. Servs., LLC* ("*Equifax*"), No. 23-20911; and *Jackson v. Cap. One Bank, NA* ("*Cap. One*"), No. 25-12054.[8] But, of these three cases, none named Defendant as a party, *Sunrise* did not involve Plaintiff's bankruptcy, and only *Equifax* was dismissed on the merits for failure to state a claim.[9] Still, though, Judge Christine P. O'Hearn dismissed *Equifax* on January 13, 2025—months before Plaintiff's "mental state at the time of the filing" of either *LexisNexis* or this matter.

[8] Defendant does refer to and attach the complaints of eight FCRA matters that Plaintiff has filed in New Jersey state court, two of which involve his bankruptcy, but the Court is presently unaware of the dispositions of these matters. [Def. Br. 4–5 & Exs. 8–16.] And none of the eight name Defendant as a party. *See* [*id.* Exs. 8–16.] This Court will leave the decision on how to treat Plaintiff's state-court complaints to the state courts.

[9] Judge Karen M. Williams dismissed *Sunrise* with prejudice, not on the merits, but because the parties failed to file settlement paperwork after informing the Court of their resolution. No. 22-04745 (Docket No. 31). And Plaintiff voluntarily dismissed *Cap. One* before a merits decision could be reached. No. 25-12054 (Docket No. 18).

Based on this record, there is a case to be made that Plaintiff filed the SAC in subjective bad faith. That said, the Court reluctantly declines Defendant's request out of consideration for Plaintiff's *pro se* status and the fact that, although it finds Plaintiff's Metro 2 theory unpersuasive, there is nothing inherently amiss about articulating different theories of liability. In the alternative, the Court **WARNS** Plaintiff that if he files another complaint in this District alleging a violation of the FCRA premised on an alleged inaccuracy about his bankruptcy that is dismissed for failure to state a claim, then he will likely have to pay the opposing party its attorney's fees for defending against it. Of course, that determination will depend upon the facts and circumstances of the individual case, but Plaintiff will now have had three such cases dismissed, at the expense of the defense and the Court's time and resources. That shall end with this Court's warning.

### C. Plaintiff's Request for Leave to File a Good-Faith Third Amended Complaint is Granted

The Court's warning naturally segues into Plaintiff's request for leave to amend. [Pl. Br. 19.] Rule 15 governs amended pleadings. If a party cannot amend its pleadings as of right pursuant to Rule 15(a)(1), as is the case here, then the party may amend its pleadings with consent of the adversary or with leave of the Court. FED. R. CIV. P. 15(a)(2). Courts shall "freely give leave to amend when justice so requires," *id.*, a liberal stance, *see Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004), and may exercise discretion under Rule 15 to deny leave to amend the complaint for undue delay, bad faith, prejudice, failure to cure deficiencies through previous amendment,

or futility, *Foman v. Davis*, 371 U.S. 178, 182 (1964); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006). "Futility," in the context of Rule 15, "is governed by the same standard as a [Rule 12(b)(6)] motion to dismiss." *Brown v. Camden City Sch. Dist.*, No. 19-114, 2020 WL 6055070, at *2 (D.N.J. Oct. 13, 2020); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

Pursuant to Rule 15(a)(2), Plaintiff requests leave to amend "given the plausibility of [his] legal theory and the availability of discovery to confirm the transmitted Metro 2 field values at the heart of this dispute." [Pl. Br. 19.] Plaintiff's second rationale puts the cart before the horse. A complaint must first be plausible to "unlock the doors of discovery;" speculative discovery does not ensure plausibility. *Iqbal*, 556 U.S. at 678. Besides, Plaintiff's Metro 2 theory is not plausible. Courts the country over have refused to recognize it. *See supra* III.A. And this Court has now thrice dismissed his FCRA claims for failing to allege any inaccuracy about his undisputed bankruptcy. *See supra* III.B.

Even so, it is not within the Court's power to imagine all the possible factual allegations that could possibly support a FCRA claim. For this reason, and because of Plaintiff's *pro se* status, the Court will grant Plaintiff leave to file an amended pleading in good faith. Plaintiff should bear in mind the Court's warning, however, as well as the doctrine of judicial estoppel. That doctrine, which the Court informed Plaintiff of in *LexisNexis*, "rests 'on the basic notion that, absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.'" 2026 WL

836921, at *5 (quoting *Semper v. Gomez*, 747 F.3d 229, 247 (3d Cir. 2014)). If Plaintiff wishes to continue pursuing a FCRA claim in this case for a bankruptcy that is not disputed, he may do so. But Plaintiff cannot claim to be unaware of the consequences should the Court find it not plausible.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Docket No. 22] is **GRANTED** and the Second Amended Complaint [Docket No. 18] is **DISMISSED WITHOUT PREJUDICE**.

Although the Court **DENIES WITHOUT PREJUDICE** Defendant's request to file a motion for attorney's fees under § 1681o(b) of the FCRA, Plaintiff is **WARNED** that if he files another complaint in this District alleging a violation of the FCRA premised on an alleged inaccuracy about his bankruptcy that is dismissed for failure to state a claim, then he will likely have to pay the opposing party its attorney's fees in connection thereto.

The Court further **WARNS** Plaintiff that any future failure to obey Local Civil Rule 15.1(a)(1) will result in the Court striking the amended pleading from the record, and possibly additional sanctions.

Keeping this in mind, the Court **GRANTS** Plaintiff leave to file a good-faith third amended complaint no later than **October 21, 2026**, addressing the deficiencies identified herein. If Plaintiff elects not to file a third amended complaint, the Court

will deem the Second Amended Complaint dismissed with prejudice. An accompanying Order shall issue.

**September 21, 2026**
Date

**/s/ Renée Marie Bumb**
Renée Marie Bumb
Chief United States District Judge